You may proceed. Thank you, Your Honor. May it please the court, Mr. Higgins, my name is Rich McWilliams and I work for the Federal Public Defender's Office and I represent the appellant in this case, Melvin Dortch. This is the kind of case where the description of what happened will take about five or ten times longer than the actual event itself. The events of June 4, 2015 occurred really within seconds. Officer Sundermeier got out of his car with another police officer, another U.S. Marshal, approached Melvin Dortch who was standing at the passenger side window of a car. Officer Sundermeier asked Mr. Dortch what he was doing. Mr. Dortch looked over and only perfunctorily replied that he was talking to his girlfriend and then turned away from Officer Sundermeier. Officer Sundermeier was upon Mr. Dortch within seconds and frisked him and as he was frisking the outer side of Mr. Dortch's jacket, found a bulge that was in fact a handgun. I first want to dispel, I think the first stage in this analysis is to dispel this idea that this could have possibly been a consensual encounter. I think that this is important because a good number of the cases that the district court and the government rely upon begin with the appellant conceding that the event began as a consensual encounter. Here, Melvin Dortch does not concede that this was at any time a consensual encounter. The officers, including Officer Sundermeier, approached in marked vests with badges, they were armed, they identified themselves as officers. Mr. Dortch gave no indication at all that he wanted to talk to the police officers. Officer Sundermeier conceded this in his testimony at the hearing. He in fact turned his back to Officer Sundermeier. Officer Sundermeier testified that if Mr. Dortch had walked away or run, he would have given chase. So I think that it is important to differentiate these facts from those of the Stewart case or the other cases cited by the district court that began as consensual encounters and then morphed into detentions. Without consent, the government must prove that there was some reasonable, articulable suspicion that Melvin Dortch was engaged in some sort of criminal activity. Now, as the court is aware, the thing itself happens in seconds and in minutes and then the reports are written in hours. And then it's turned over to the lawyers and we spend weeks and months constructing a justification for what happened in seconds and in minutes. And here the government has taken a kitchen sink approach to justifying the detention, the stop and frisk of Melvin Dortch. They begin by saying that his behavior was consistent with street level drug activity. They throw out a laundry list of city ordinances that deal with pedestrians and drivers. But mind you, nothing in the records suggests that any of this was on the mind of Officer Sundermeier as he walked up to Melvin Dortch. What he wanted to do was he wanted to find out what Melvin Dortch was doing. The government and Officer Sundermeier say it best. As Officer Sundermeier walked up, he had no idea what was occurring in the street there. Well, but the Supreme Court has said an officer has a right to go up and inquire. And if that does lead to a consensual encounter, that is correct. But this morphs within, I mean, I don't think there's a differentiation point where this turns into at any point a consensual encounter. Let me ask you this. The record indicates this is in a drug area. These were drug officers in unmarked cars. There have been shootings reported in the area and guns confiscated in this area and so forth. And you've got a pretty strong case for you in United States v. Jones in 2010. But kind of my question is things change. You know, I think police officers are more targets in 2015, 16, 17. Maybe they were in 2010. And so the question is, if you go up in a stop in that environment, how do we say that the police officer to protect himself cannot ask if you have a gun and then frisk somebody under the circumstances of this case? Well, I think the overwhelming macro trend of crime statistics suggests that it is safer today to be a police officer than at any time in recent history, to include in 2010 when the Jones case was decided. And I am, as the son of an Omaha police officer, I am immensely sympathetic to the safety concerns that go into being a police officer, particularly in an area that they have deemed to be a high crime area. That said, we are a nation of laws. And one of the amendments to the Constitution says that we shall not be, nobody in the city, not us in the better parts of the city nor the citizens of North Omaha, are abandoned their Fourth Amendment principles simply based upon crime statistics or trends. When Officer Sundermeyer walked up to Melvin Dorch, he knew nothing about Melvin Dorch. He knew nothing about his record or anything about him. It was daylight. There were three police officers. This is not a situation where it's dark, whether this is a known felon or anything like that. This is just them happening upon a situation in broad daylight, and the Fourth Amendment still stands. You know, North Omaha is not a constitutional free zone. Mr. McWilliams, this initial inquiry, do we judge it under the elements of Terry v. Ohio and then move on to a need for probable cause? Is that our task here today? I think that the order of analysis is first, yes, Your Honor, that you first analyze whether there was a reasonable suspicion. If there was reasonable suspicion, he could have made the inquiries that he did, but then he needed something more than reasonable suspicion to move into a search. And your client pled guilty but reserved the Fourth Amendment issue for what we're doing now, right? That is correct. And so, yes, Your Honor, the first stage is you have to decide whether there was a reasonable, articulable suspicion that criminal activity was at foot. If there was, then the officer could properly detain Mr. Dortch. But then in order to pat him down or frisk him, there had to be, there's an additional element that there must be some evidence that Mr. Dortch was armed and dangerous. There was pretty clearly enough for a Terry inquiry here, wasn't there? I disagree. I disagree. The government gives a number of possible reasons why our officer Sundermeyer wanted to stop Mr. Dortch. The first is that because Mr. Dortch was leaning into the passenger window of a car and speaking with someone that that's consistent with street-level drug activity. I mean, consistent with is the great nothing statement of all time. I mean, everything that's consistent with street-level drug activity, buying Ziploc bags is consistent with street-level drug activity. The car was illegally parked, wasn't it? I think that that would give the officers a reasonable suspicion to detain the driver of the car, not anyone within the immediate universe or immediate area around the car. You could ask, who do I give the ticket to? The driver was seated in the car. I mean, that would have been a different matter if they had walked up to the driver of the car. Here they did not. They walked directly to Mr. Dortch and confronted him. But nothing that what these cars were doing was individualized or places any individual suspicion upon Mr. Dortch. Let me just say, obviously all I know is what I read in a whole horde of cases like this, is that it's very common for police officers to go up if they've got a ticket, say a state patrol officer on the highway and somebody's speeding, they go up and talk to him. If there's a passenger or somebody else available, they always talk to that person. That's correct. And so I don't understand why you're saying that he didn't have enough, that he didn't have constitution, he couldn't talk to your client. I think he is free to approach them in a consensual sense, but if Mr. Dortch shuts down the consensual encounter, then there has to be more to that. And one of the reasons why the Supreme Court has permitted passengers of vehicles to challenge not only the detention, but the stop itself is because they recognize that when you're in a car, when you're in the car and the car is stopped, like in the highway in the middle of nowhere, that you've been effectively stopped too. Here, that's not the fact pattern. We're not on the interstate and Melvin Dortch is not sitting in the car. He's standing in the street next to a stop car much in the way that I'm sure all of us have been at some time. But I've also seen him where the officer stops somebody on the street for something and there's another person there. They'll turn their inquiry to that other person as well. I don't know. I've never seen a case where they said that an officer couldn't come upon two or more people and suspect one person violated the law and not question everybody else there. Well, I think that they are free to talk to whomever, but if you want to detain them, to restrain them from leaving, you have to have suspicion. I think that was just being questioned. The Terry stop, the stop and talk, it seems like that's done all the time, and we don't say you cannot do that. Well, I think, back to my original point, that in cases like the Stewart case, cases that are relied upon by the district court, that is the general fact pattern. It begins as a consensual encounter where officers are just talking to anyone that's standing around. But in this case, the rubber hits the road almost immediately where Mr. Dortch does not want to speak with the officers, and at that point, if they want to restrain him from leaving, they have to be, at that point, able to define some reasonable, articulable suspicion that is individualized to Mr. Dortch. But he did answer the officer's questions. I mean, he didn't say, I'm not going to talk to you or walk away or anything. He did answer the question. He answered the officer asked, what are you doing, which is not a greeting common to individuals, and then Mr. Dortch turned his head and said, I'm talking to my girlfriend, and then turned his back on him. When people turn their back on me when I talk to them, which is not uncommon. And he asked him, do you have a gun, and he answered that question. That was as he was patting him down. The detention had already been, at this point, effected. I see I'm into my rebuttal time, if I may reserve a few minutes. Yes. Okay, Mr. Higgins, you're next. May it please the court, Mr. Williams. You may proceed. Thank you, Your Honor. The recovery of the firearm from the defendant here was proper, and it was proper for two reasons. I have two points. First, the officer was legally justified to be in contact with Mr. Dortch there in the street, as they were. And second, the officer did develop a reasonable suspicion that this defendant may be armed, therefore dangerous. The legal justification for this officer to be in proximity to this defendant, there's three bases. They're independent, they're legally sufficient in our estimation. Basis number one, consensual contact. Consensual contact is based on the circumstances that a reasonable person would believe to be the case based on the circumstances. What I mean is, there's no justification required for an officer to walk up to somebody in the street and ask them a question. Literally, that's where the defendant was, and literally, that's what the officer did. Remember the scene, two vehicles that are parked in the street initially? The officers approach from the north. All three of them are in one vehicle. The Pontiac pulls forward and parks illegally, just like this van had parked illegally. The defendant is at the passenger window. Officer Sundermeier is the sole officer who approaches the van, gets out of his vehicle, doesn't run. He walks. There's no lights. There's no sirens. There's no commands. There's no halt police. There's no stay where you are. There's an approach on foot. He asks two questions of this defendant, and up to the point where the pat-down occurs, that encounter is consensual. So that's basis number one. Basis number two is that the officer is legally justified to maintain the status quo at the scene of at least this van. And I would suggest both the van and the Pontiac to figure out what's going on and to investigate the apparent law violations, rules of the road, the parking violations of the driver of the van and the driver of the Pontiac. I've cited cases where a defendant was a passenger inside of a vehicle. I can't find one where we have this circumstance where the defendant is leaning into the open window of a vehicle that the officer approaches, and that vehicle is one that is, for lack of a better phrase, stopped for a traffic violation. There's no stop. The officer approaches on foot. But I think the legal principle is the same. That is, the officer is legally justified to maintain the status quo, Mr. Dortch and the driver, while trying to figure out what's going on with this van. Is it a violation of the Fourth Amendment to, if you've done a Terry stop, and as I understand it, counsel indicates that the Terry stop here was legal, then say I'm going to patch you down. Is just that statement, I'm going to patch you down, a violation of the Fourth Amendment? Judge, if there is not a sufficient legal basis to detain the person, then I would say . . . You're going beyond my . . . As I understand the facts here, he did a Terry stop, and he talked with him, and then he said, I'm going to patch you down. He hadn't done that. Before he could do that, he said, it's in . . . I'm going to patch you down for a weapon, and he said, it's in my pocket. Well, that probably gave him probable cause then to go the next step, right, or not? Judge, had those been the facts, then I would agree with you. Those weren't the facts? No, sir. I don't believe they were. Okay. Well, it's in the lapel pocket, and Dorsett said, it's in my pocket. Judge, there was a report that was written by a second officer, and I think that might be where the court is deriving that. My understanding of the facts are, as I've described, the officer walks up, he engages Mr. Dorsch in conversation, meaning two questions. What's going on, or what are you doing? Question one. Question two. Are you armed? The officer then does conduct the pat-down, and he has the defendant put his hands on the vehicle. So I think as a matter of law, the defendant's detained at that point because there's a pat-down. I don't think it's consensual, and I don't think that there was an admission of the firearm prior to the officer placing hands on the defendant. Okay. Thanks for clearing me up on that. How do you distinguish this from United States v. Jones? Judge, it's as simple, I think, as reason to stop versus reason to frisk. The Jones decision turned entirely on whether or not the officers had a reasonable suspicion sufficient to stop Mr. Jones in the first instance. This is different for two reasons. Three, I would say. Reason number one, it's a consensual contact because there's no order, no command, no lights and sirens up until the time of the pat search. That's legally sufficient basis one. Two is the law violations the officers see by the van driver and the Pontiac driver, certainly at least the van driver. The defendant is part of that scene. I think the officer has the legal authority to maintain the status quo. That's basis number two. Three is that there were potential violations having been committed by this defendant who's standing in the street. How did he get there? Well, the officers don't know. They testify. They don't know what's going on. Was the defendant soliciting a ride? Was he soliciting a contribution? Those would be violations of particular ordinances of the city. Was he walking down the street rather than on the shoulder? Did he cross at some point other than the traffic control device, which is at the next corner? The officers don't know that. So that would be the third differentiation. This is not an individual like Mr. Jones who is simply walking down the street, clutching his torso, and the officers think, oh, he's got a gun. That decision turned entirely on the analysis of was there a reasonable suspicion sufficient to detain before they even get to the pat search? So the second issue, Judge, or my second point, there's a legally sufficient basis for the officer to be in contact with Mr. Dorch. Second, the officer did have a reasonable suspicion that this defendant was armed. He was already in proximity to the defendant in a justified and legally appropriate way. Well, reasonable suspicion is a terry, but probable cause to search him, right? Judge, I don't believe the officer needs probable cause to conduct a pat search, an outer clothing frisk. So if there's evidence, if there seems to be evidence of same. If there are specific circumstances that warrant a reasonable person, reasonably prudent person, to believe that his safety or that of others is in danger. And there was here. The circumstances, I think, can be grouped into three. The officer is supposed to consider and may consider the totality of the circumstances. This court is to do likewise. Group number one was this defendant's coat versus the weather conditions. The coat or jacket, it's canvas outer. It's insulated. It's described in the record by the officers as thick or bulky. This is not a hoodie. This is not a sweatshirt. That was inconsistent with the weather conditions. Inconsistent in the opinion of the officer who'd been on duty for about four hours that day. Hadn't seen anybody else wearing outerwear similar to what this defendant was wearing, patrolling in that area. We had the weather records that were introduced. That's exhibit one. And about 20 minutes, excuse me, from about 40 minutes before to about 20 minutes after this event, that's the closest in time we have readings for the time of the encounter, it was in the range of 70 to 73 degrees, and the wind was zero. Well, earlier in the day it had been warmer. It also had some traces of rain reflected on the weather report. It had been windy at various times. But the point is at the time the officer is there making contact with this defendant and he's got this bulky coat on that's not consistent with the weather conditions and he hadn't seen anybody else dressed with similar outerwear. So that would be circumstance number one. Oh, beyond that, the officer's own experience, which I think he's entitled to draw on, and that is when people want to conceal something, sometimes they'll wear a bulky item. And that's a circumstance that an officer is entitled to consider. So that would be circumstance number one. Circumstance number two is the defendant's own conduct. And the description, well, just to begin with, the consistent with street-level drug trafficking, absolutely that's evidence. If this defendant is standing at the window of a passenger vehicle stopped in the street, as opposed to the ice cream truck or the ding-dong man, or as opposed to on his knees with a jack in his hands, where he's standing, where these cars are, he's an adult, et cetera, these are all facts that the officer observed and drew a conclusion which he is allowed to draw, and that is this appears to be consistent with drug trafficking. So that's part of the conduct. Well, of course, the test is an objective one, not a subjective one. Of course it is, Judge, but I think the officer is able to draw on his own experience and draw reasonable inferences from the facts, and those facts are not in dispute. The other conduct. Are you going through the facts that led him to believe that he had reasonable suspicion sufficient to pat him down? Yes. Because Terry doesn't give you that authorization unless it advances to some point that you have reasonable suspicion that there may be a dangerous weapon or something like that, and then you can pat, unless I misunderstand Terry. Well, this officer did believe that the defendant may be armed. Based on what? The circumstances that I'm just going through now, Judge. Number one, the coat versus the conditions. Number two, the defendant's own conduct. He's at this vehicle window, which I just described. Beyond that was the defendant's own conduct as the officer approaches. The defendant is standing at the open window of this passenger van, and the officer is approaching from the direction of the court. The officer testified that the defendant initially turns his head completely and makes eye contact with the officer. The officer approaches on foot and asks the question, you know, what are you doing or what's going on or what the record reflects exactly what the question is. The defendant, as the officer is approaching, he presses his body up against the door of the van. He frees up his hands, meaning he had a cell phone in his hands, which he places on the passenger seat through the open window of this van as the officer is approaching. And then when the officer gets to within, I think he testified about four feet, asks what are you doing or what's going on. The defendant doesn't turn and face the officer. He doesn't even turn his head completely to face and make eye contact with the officer. He keeps his body pressed up against the door of the van, and he turns his head partway. And the officer was very specific about the defendant not turning his head even far enough to make eye contact with the officer. Why does that matter? Well, if you've got an object, a bulky object, a weapon, that would be an excellent way to keep someone from seeing the bulge, to stop from, if you turn, your coat swings open. Oh my goodness, this thing's sitting on the interior pocket, which is exactly where it was found. You know, it bangs against the door of the van, and then the jig is up. So the conduct of the defendant, the third circumstance, which I think the officer is entitled to consider, are the recent events, not in the city, not in that neighborhood, but specifically at that location. This encounter occurs right in front of an apartment, 29th and Parker. In approximately the three weeks preceding that encounter, there had been two firearms recovered, the officers testified, at that location, in the vicinity of that specific apartment, and also a shots fired call. In addition, they were aware, the officers were, that that location was within the territory claimed by one criminal street gang, but there were indications that members of a different criminal street gang were moving into that apartment and resulting in friction. So that's the third group of circumstances that the magistrate accepted, the district court accepted, and we're asking that this court accept as a reasonable basis for this officer to conclude that the defendant was armed. So therefore, they were pat down, the recovery of the firearm we contend is proper, and we're asking that this court affirm the decision of the district court denying the defendant's motion to suppress. Okay, thank you very much. Thank you. Mr. McWilliams, you have almost three minutes. None of the municipal code ordinances that are cited by the district court or the government were being violated. There was not even reasonable suspicion that Melvin Dorch was violating any of those codes. None of those municipal ordinances were cited or mentioned by Officer Sundermeyer as the reason he stopped Melvin Dorch. I'll say the same thing to you. It's an objective test, and a reasonable officer could have done that. Correct, but if you look at the elements of all of those offenses, there was not even a scintilla of suggestion that Melvin Dorch was violating any of those ordinances. All of those ordinances, and in my brief, it goes through them one by one, explaining what the elements of those ordinances are and how Melvin Dorch was not violating any of them. And if Officer Sundermeyer, when he was testifying, only testified that he believed that standing in the roadway was a violation of the Omaha Municipal Code, it is not. The ordinances later found by the government were not on Officer Sundermeyer's mind, but even if, as the court notes, even under an objective viewing of those municipal ordinances, he wasn't violating any of them. And even if he was engaging in one or two of the elements of, say, a four-element ordinance, that does not reasonable suspicion make. It's not like if you're a police officer and you see someone operating a motor vehicle, you get to stop them so you can find out if the third element that they're intoxicated was met. It's not based on the number of elements that they may or may not be engaging in. Standing in the street in an open car window is not a violation of any of the municipal codes. What do you think about Mr. Higgins' distinction of the Jones case? I heard it. I disagree with it. In the Jones case, it's the same general fact pattern. The distinction between Jones and the present case turns upon whether or not the court believes that this was a consensual encounter. It was not. The Jones case specifically states that if the stop is bad, then the ensuing frisk is bad. And in this case, the stop was bad. But even setting aside that, the ensuing frisk was also bad. What the Jones court hung its hat upon was that it was remarkable, the court said, that there was no basis given for the stop itself. And in this case, I think the same is true. The bases that have been given are not sufficient. Consistent with street-level drug activity, he was standing at a car window. Municipal codes that don't apply. None of these bases hold water, and therefore it's not distinguishable from the Jones case. I don't see how, if you were a police officer, you can walk around with Jones being good law and this being good law and know what to do at all. If there are no further questions, I thank the court for its time. Okay. Thank you very much. Thank you both for your presentations today. We will take it under advisement. We'll be back to you as soon as we can.